In the United States District Court
Northern District of Texas
Dallas Division

| | |
|---|---|
| Joyce Gray | § |
| | § |
|    Plaintiff, | § |
| | § |
| v. | §   Civil Action No. _____ |
| | §       Jury Demanded |
| | § |
| Dallas Regional Chamber | § |
|    Defendant | § |

### Plaintiff's Original Complaint

Plaintiff Joyce Gray ("Gray" or "Plaintiff") files this Original Complaint against Defendant Dallas Regional Chamber ("DRC" or "Defendant") and shows:

### Parties

1. Plaintiff Joyce Gray is an individual citizen of Texas.

2. Defendant Dallas Regional Chamber is a domestic nonprofit corporation doing business in Texas. It may be served by serving its registered agent, Angela Farley, 500 N. Akard Street, Suite 2600, Dallas, TX 75201.

### Summary of Legal Claims

3. DRC discriminated against Gray, a qualified African American employee, in the terms and conditions of her employment at DRC because of her race. It refused to promote Gray and terminated Gray because of her race. DRC retaliated against Gray after Gray engaged in protected activity. Gray sent DRC an email questioning why few

African Americans received a promotion beyond the Director level. In the months following, DRC retaliated against Gray by micromanaging her work, scrutinizing her attendance, criticizing her demeanor, taking away her database responsibilities and, finally, firing Gray on December 1, 2021.

4. Gray sues for race and color discrimination and retaliation under 42 U.S.C. § 1981 and Title VII.

## Venue and Jurisdiction

5. Venue is proper in Dallas County because DRC does business in Dallas County. Gray worked for Defendant in Dallas County.

6. This Court has federal jurisdiction over the claims asserted under Title VII and 42 U.S.C. § 1981.

## Factual Background

**DRC Hired Gray in August 2015**

7. DRC hired Gray in August 2015 for the database administrator position called "Manager, Database." Gray is highly qualified for this position.

8. DRC regularly gave Gray positive performance reviews and raises.

9. During Gray's employment, sometimes, she was felt she was subjected to disparate treatment because of race. Over the years, Gray made various complaints internally about these incidents. However, nothing materially changed.

10. In December 2018, Gray got a pay raise and completed all of her year-end goals. Gray requested a promotion. DRC initially told Gray she would not be promoted and that a promotion was unjustified for Gray.

11. DRC later reversed itself and agreed to promote Gray to Director.

12. DRC also promoted another African American women to the Director position.

13. At the same time, DRC promoted three Caucasian women to Managing Director positions.

14. Gray continued to be subjected to microaggressions and hostility in her work and disparate treatment because of her race.

15. Things improved slightly for Gray during the Covid 19 pandemic when DRC employees worked remotely from home from March 2020 through October 2021.

**Gray's protected conduct and complaints about the lack of promotions for African American employees.**

16. In March 2021, DRC promoted several employees. No African American employees were promoted at that time. Gray and another African American employee spoke with their manager, Tom Dubrowski, and asked why no African Americans had been promoted. Neither Gray or her African American peer had been promoted. The discussion ended without a substantive answer to their question.

17. Also in March 2021, one of Gray's coworkers, a Caucasian female, took credit for Gray's work in an email sent to their manager. Gray complained about her coworker taking credit for Gray's work.

18. DRC Human Resources representative Shaun Storer (Caucasian) met with Gray and Dubrowski. Storer told Gray she had failed at her job and that the coworker needed to complete the task for her. This was false.

19. DRC always gave Gray positive performance reviews and yearly bonuses, including during the spring of 2021.

20. However, after Gray began to openly question why no African Americans had been promoted, Gray's work—which she successfully performed for the prior six years—now began to be questioned by other employees including her manager.

21. On July 9, 2021, Gray sent an email with the subject line of "Diversity of Promotions, Except African Americans" to DRC CEO Dale Petrosky, CFO Angela Farly and HR's Shawn Storer. A copy of this email is attached as **Exhibit 1.** With this email, Gray questioned the glass ceiling she observed where an ability of an African American employee to be promoted above the Director level was stymied.

22. In August 2021—the month after Gray sent the email—DRC hired two African American women for leadership roles. This included Sharon Carson and Camille Landor.

23. DRC also hired a Caucasian female, Ann Small, as a consultant to work on the database.

24. Just two months after Gray sent this email to DRC leadership, Gray saw a job posting online for what appeared to be her job. Though titled a Data Analyst, Supporting

Marketing and Membership position, the duties advertised in that job position consisted of about 85% of Gray's job duties. Gray saw this job advertisement on September 15, 2021.

25. In October 2021, Gray met with HR Shawn Storer and CEO Dale Petrosky to complain about the job advertisement for what seemed to be her job and that Gray was being moved from the administrator of the database with those duties going to the Caucasian Consultant.

26. Petrosky seemed surprised to learn of the job advertisement and did not seem aware of it.

27. Petrosky told Gray he would look into the possibility of a promotion for Gray.

28. Soon after that meeting, Storer stopped working for DRC.

29. On October 7, 2021, DRC employees returned to work in the office.

30. During October 2021, Angela Farley (Caucasian) and the CFO for DRC, sent Gray two emails during a three week period questioning Gray's whereabouts and commenting that Farley did not see Gray at meetings or in the office.

31. On both of those occasions, Gray was on scheduled Paid Time Off. Farley apparently had not checked Gray's schedule because she would have known Gray was on PTO time had she done so.

32. Farley did not subject the other DRC employees to the same level of scrutiny or question their whereabouts like she questioned Gray.

33. Also in October 2021, Farley told Gray she "was not sure" Gray was handling her job tasks. Farley started sending Gray emails to question Gray about the processes that Gray had been handling successfully for the prior six years.

34. Gray suggested that Farley come sit with her for a day so that Farley could see what she did. Farley told Gray that Farley did not have time for that.

35. Gray then suggested Farley sit with her for even half of a day. Farley never did so.

36. Because Farley chose not to sit with Gray, Farley did not observe that Gray continued to complete all of her tasks with the same competence she exhibited during the entire six years of her employment as shown by her positive job reviews.

37. DRC transferred Gray to the team managed by Sharon Carson—one of the African American females hired the month after Gray sent her "glass ceiling" email to DRC. Shortly after Gray was transferred to Carson's team in October 2021, Carson told Gray that Ann Small, the Caucasian consultant, would take over Gray's duties of the database.

38. DRC then demoted Gray. Carson told Gray that Gray was needed to stuff envelopes, create invoices, and make cold calls. These duties were a demotion from Gray's Director level position and would normally be handled by a Coordinator or Administrative Assistant.

39. When Gray transitioned to Carson's team, Carson was immediately hostile to Gray. She criticized the way Gray dressed, yelled at her and would accuse Gray of not paying attention in meetings. Carson did not treat others on the team the same way. In a

discussion of what was happening to Gray at DRC, Carson said to Gray that "You know, this is these white folks' stuff. It belongs to them. We have to do what they say."

**DRC fired Gray.**

40. Just weeks after Gray transitioned to Carson's team, DRC fired Gray on December 1, 2021. DRC had a security guard escort Gray out of the building after it fired her.

41. When DRC fired Gray, it needed someone to perform the database duties. DRC replaced Gray by giving her database duties to Small, the Caucasian consultant.

**Gray timely filed her Charge of Discrimination and this lawsuit.**

42. Gray filed a Charge of Discrimination with the TWC in January 2022. This Charge was dual filed with both the TWC and the EEOC. The TWC issued Gray a dismissal and notice of right to sue on September 24, 2023.

43. The EEOC issued Gray a Determination and Notice of Rights on October 16, 2023. A copy of this is attached as **Exhibit 2.**

44. Gray timely sues.

## Causes of Action

### 42 U.S.C. § 1981 and Title VII Retaliation against DRC

45. Gray incorporates the preceding paragraphs as if restated

46. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute states that "all persons … shall have the same right in every State

and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment.

47. This statute also protects employees who report violations of the law from retaliation.

48. Title VII also protects employees who engage in protected activity from retaliation. DRC is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b). Gray is an employee for Title VII purposes.

49. Gray engaged in protected activity by reporting race discrimination to DRC during her employment.

50. Gray engaged in protected activity on July 9, 2021 when she sent an email to DRC questioning the "glass ceiling" on the promotions of African American employees.

51. Within weeks of her report, DRC retaliated against Gray.

52. DRC subjected Gray to more job scrutiny and began to criticize her job performance. DRC questioned her whereabouts and subjected her to disparate treatment. It did not subject her peers—who had not complained of race discrimination—to the same level of scrutiny.

53. DRC planned to terminate Gray and began to advertise for a replacement for Gray's position. It posted a job advertisement for what was essentially Gray's job.

54. DRC took away Gray's job duties and gave them to the Caucasian consultant.

55. DRC functionally demoted Gray by taking away her database duties and asking her to stuff envelopes, make cold calls and do other administrative work.

56. DRC fired Gray on December 1, 2021.

57. DRC fully knew of Gray's protected conduct because Gray sent her email to the CEO, CFO and Human Resources. DRC then hired an outside agent to investigate the concerns Gray reported. DRC sent Gray a formal response to her concerns following its investigation.

58. DRC retaliated against Gray in violation of 42 U.S.C. § 1981 and Title VII because of her protected activity.

59. DRC would not have retaliated against Gray but for her protected activity. DRC would not have subjected Gray to the additional job scrutiny, demoted her or fired her had Gray not complained about discrimination at DRC.

60. DRC's retaliatory actions were taken with malice and/or a reckless disregard for Gray' rights.

61. DRC's retaliatory actions damaged Gray. Gray lost her valuable income and benefits. It took Gray months to find new employment. Gray suffered compensatory damages and intangible harms and losses such as great financial stress and reputational harm.

62. Gray seeks to recover the damages she suffered from DRC's retaliation in violation of 42 U.S.C. § 1981 and Title VII, including injunctive relief, equitable relief and

reinstatement, the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

**42 U.S.C. § 1981 and Title VII: Race Discrimination against DRC**

63. Gray incorporates the preceding paragraphs as if fully restated.

64. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute states that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment.

65. DRC is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b). Title VII prohibits discrimination against an employee because of an employee's race or color. Gray was an employee as defined by Title VII.

66. Under Section 1981, Gray had a contract of employment with DRC.

67. DRC subjected Gray to disparate treatment in the terms and conditions of employment. DRC treated Gray differently than her non-African American peers.

68. DRC subjected Gray to disparate treatment. Defendants treated Gray differently in the terms and conditions of her employment as compared to people outside of her protected category. DRC treated no other person who worked at DRC as poorly as they treated Gray.

69. DRC refused to promote Gray after her 2018 promotion to Director because of her race.

70. DRC terminated Gray because of her race. DRC's conduct has been disparate, intentional, deliberate, willful and in a callous disregard for the rights of Gray.

71. Through its conduct, DRC deprived Gray of the same rights as enjoyed by white employees to the creation, performance, enjoyment and all benefits and privileges of her employment with DRC in violation of 42 U.S.C. § 1981.

72. DRC has no legitimate and non-discriminatory reason for its actions. DRC's stated reasons for terminating Gray are a pretext for race discrimination. DRC's stated reason are not the real reason for its actions.

73. Gray suffered damages because of by this violation of 42 U.S.C. § 1981 and Title VII.

74. Gray is entitled to all legal and equitable remedies available under 42 U.S.C. § 1981 and Title VII. Gray lost her income and benefits when she was fired. Gray suffered intangible harms and losses when she was fired, including reputational harm.

75. Gray seeks to recover all damages to which she is entitled under 42 U.S.C. § 1981 and Title VII including injunctive relief, equitable relief and reinstatement, loss of wages and benefits, compensatory damages for emotional distress, mental anguish and other intangible harms and losses such as damages to reputation, punitive damages, pre-judgment and post-judgment interest, and his reasonable attorney's fees and costs.

## Jury Trial

76. Gray demands a trial by jury.

## Prayer

WHEREFORE, Plaintiff Joyce Gray requests the following relief:

(a) a declaratory judgment that Defendant's employment policies, practices, and/or procedures challenged in this lawsuit are illegal and violate Section 1981 and Title VII;

(b) a permanent injunction against Defendant and any persons acting in concert with them, from engaging in any further unlawful practices policies, and race discrimination and retaliation by the Defendant;

(c) an order requiring Defendant to initiate and implement programs that (i) will provide equal employment opportunities for African American employees, (ii) will remedy the effects of the Defendant's past and present unlawful employment policies, practices or procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described;

(d) an order requiring the Defendant to initiate and implement systems of assigning, training, transferring, compensating and promoting African American employees in a non-discriminatory way;

(e) an order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (a) through (d) and which would provide for

monitoring, reporting and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to determining the effectiveness of the programs described in (a) through (d);

 (f) an order restoring Plaintiff to the job that she would now occupy but for the Defendant's discriminatory and retaliatory policies, practices, and procedures;

 (g) an award of back pay, front pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff;

 (h) any other appropriate equitable relief;

 (i) an award of compensatory, nominal and punitive damages to Plaintiff;

 (j) an award of litigation costs and expenses, including reasonable attorney's fees to Plaintiff;

 (k) pre-judgment interest and post-judgment interest;

 (l) such other and further relief which the Court may deem just and proper; and

 (m) retention of jurisdiction by the Court until the Court is satisfied that the Defendant has remedied the practices complained of in this lawsuit and are found to be in full compliance with the law.

        Respectfully submitted,

        <u>/s/ Karen K. Fitzgerald</u>
        Karen K. Fitzgerald

        State Bar No. 11656750
        Fitzgerald Law, PLLC
        8150 N. Central Expy, 10th Floor
        Dallas TX 75206
        214.265.9958 (direct dial)
        karen@fitzgerald.law

        Attorney for Plaintiff Joyce Gray

**From:** Joyce Gray
**Sent:** Friday, July 09, 2021 10:45 AM
**To:** Dale Petroskey <dpetroskey@dallaschamber.org>
**Cc:** Angela Farley <afarley@dallaschamber.org>; Shawn Storer <sstorer@dallaschamber.org>
**Subject:** Diversity of Promotions, Except African-Americans

Hi, Dale,

A little over a year ago, we all learned of the horrific murder of George Floyd by a Minneapolis police officer. A nation, albeit the world, bonded briefly, unified by a single chorus that a social and economic change must come and it must be real, definitive, inclusive. Just.

At the DRC, we minorities of African American, African, Filipino, Asian, and Hispanic descent shared our grief and our experiences. The DRC, along with other companies across the local landscape made plans to change, to work to ensure economic and social justice for all.

Within the walls of the DRC, a new diversity team was placed, plans framed, decisions cast, committees named.

Less than a year later, diversity and inclusion at the DRC reports these numbers of upper-level positions of those of African or African American descent:

Senior Vice Presidents: three (but only one actually handles DRC business [Education] -- the other two lead diversity and community development efforts).

Vice Presidents: None

Managing Directors: None

For some reason, in the six years that I have worked at the DRC, African Americans (Drexel Owusu was of African descent) have reached a glass ceiling that stops at promotion to Director:

Yvetta Shaw, Director
Milton Grays, Director
LaDondra Wilson, Director
Jeremiah Anderson, Director
Joyce Gray, Director

Today, July 9, 2021, these numbers are even more dismal:

Yvetta Shaw, Director, Finance
Joyce Gray, Director, Database

One may assert that employees not on the "Profit" side of the business are usually not promoted, but then the question is begged -- if there are no African Americans hired on the profit side, does this point to a sort of an in-place justifiable deniability?



Another question is begged -- can there really be no African Americans in a six-year period (my tenure) that have distinguished themselves sufficiently enough to aspire to positions higher than Director?

The true irony is that the whole diversity and inclusion efforts of the DRC began with the murder of African American George Floyd.

Yet, I have been asked why I quit the Diversity Committee.

My sorrow of the moment is enhanced by the placement of a new DEI team, a team charged with making changes within the walls of the DRC that should have ended my quest for diversity and inclusion. I should not have had to write these words to you today. Yet, promotions were announced a few weeks ago, and nothing has changed. African Americans were not a part of this new "diversity and inclusion."

I close this missive with the words of philanthropist Sheryl Sandburg:

"We need to resist the tyranny of low expectations. We need to open our eyes to the inequality that remains. We won't unlock the full potential of the workplace until we see how far from equality we really are."

Joyce Gray

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Dallas District Office
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website:  www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/16/2023

**To:** Joyce Gray
1025 Arches Park Drive
Allen, TX 75013
Charge No: 31C-2022-00217

| EEOC Representative and email: | ELISE GALICIA
Administrative Assistant
elise.galicia@eeoc.gov |

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is the official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

For

Norma J. Guzman
Field Director


PLAINTIFF'S EXHIBIT 2

**Cc:**
Dallas Regional Chamber
c/o Kim Moore
Clark Hill
2600 Dallas Parkway, Suite 600
Frisco, TX 75034

Dan A Atkerson
LAW OFFICES OF DAN A ATKERSON
1025 ARCHES PARK DRIVE
Allen, TX 75013


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.